IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AZER SCIENTIFIC INCORPORATED : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> QUIDEL CORPORATION : <br> : <br> Defendant. : | CIVIL ACTION NO. 5:21-cv-02972 <br><br> JURY TRIAL DEMANDED |

**FIRST AMENDED COMPLAINT**

Plaintiff Azer Scientific Incorporated ("Azer"), by and through its counsel, hereby brings this First Amended Complaint against Defendant Quidel Corporation ("Quidel") and, in support thereof, alleges as follows:

**NATURE OF ACTION**

1. This breach of contract lawsuit arises out of Quidel's decision to renege on its commitment to work with Azer to produce COVID-19 diagnostic test kits.

2. Plaintiff Azer manufactures and supplies products for laboratories, and provides manual and automated tube-filling services. Defendant Quidel develops and manufactures medical devices. Under a contract with Quidel, Azer agreed to produce Quidel's liquid solution for Quidel and to fill and cap millions of Quidel's tubes for use in Quidel's diagnostic test kits.

3. Earlier this year, Quidel approached Azer about its need to fill and cap one million 2 milliliter (mL) tubes per week (that need ultimately more than doubled, to 2.5 million 2 mL tubes per week). Azer responded that it would be willing to do so, but that to satisfy Quidel's request, it would need to purchase and install specialized automation machines and equipment that could fill the 2 mL tubes. Because that would require Azer's substantial

investment of time and money, Azer informed Quidel, in writing, that it would need Quidel to commit to a minimum unit order to be supplied over at least a 12 month period. In a written response, Quidel confirmed its unequivocal acceptance of Azer's offer to supply the 2.5 million prefilled tubes per week, including an express confirmation of Quidel's 12 month commitment, the minimum unit amount, price, and approval of Azer's purchase of the automated machines to fulfill Quidel's order.

4. At that point, a valid and enforceable contract existed between Quidel and Azer. In June 2021, however, Quidel breached the contract, informing Azer that it would not order the agreed-to units. By that time, in reliance upon the parties' agreement and Quidel's express assurances, Azer had already purchased the specialized automation equipment, hired additional staff, and committed other company resources to fulfilling Quidel's order, and Quidel had already shipped tubes and caps to Azer for Azer to begin testing its filling processes.

5. Azer seeks declaratory relief and damages for Quidel's breach of the contract and Quidel's statements and actions constituting an anticipatory breach of the contract. In the alternative, Azer seeks damages under promissory estoppel based on Quidel's express promises, upon which Azer reasonably relied and which induced Azer to purchase specialized equipment and incur other expenses to its detriment, and quantum meruit and unjust enrichment based on Quidel's retention of benefits conferred by Azer without compensation.

## PARTIES

6. Plaintiff Azer is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 701 Hemlock Road, Morgantown, Pennsylvania, 19543.

7. Defendant Quidel is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 9975 Summers Ridge Road, San Diego, California, 92121.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this case on diversity grounds, pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

9. This Court has personal jurisdiction over Defendant Quidel because the causes of action asserted in this Complaint arise out of Quidel transacting business in Pennsylvania, contracting for services or products in Pennsylvania, causing harm to a Pennsylvania company by an act or omission in Pennsylvania, and causing harm to a Pennsylvania company by an act or omission outside Pennsylvania.

10. Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the judicial district of the Eastern District of Pennsylvania. These events or omissions include, but are not limited to, the following: Quidel approached Azer to enter into a contract related to the production of COVID-19 diagnostic test kits, which contract would be performed at Azer's headquarters in this District; Quidel negotiated and entered into a contract with Azer, a Pennsylvania corporation located in this District; Quidel shipped tubes and caps to Azer at its headquarters located in this District so Azer could begin the process of fulfilling Quidel's order; and the automation machines and equipment, specially made to fill and cap Quidel's tubes, were shipped to Azer at its headquarters in this District.

**FACTUAL BACKGROUND**

A.   **Quidel Asks if Azer Can Fill One Million 2 mL Tubes Per Week and Azer Responds that Azer Would Have to Order New Automation Equipment to Do So**

11.   On or about March 2, 2021, Kyra Bader, who upon information and belief is an employee, agent, and/or authorized representative of Quidel, sent an email on behalf of Quidel to Adam Ardekani, President of Azer,[1] asking whether Azer could fill one million 2 mL tubes per week for Quidel for use in diagnostic test kits. Azer responded by email that its automation process was set up to fill and cap 10 mL tubes only.

12.   Two days later, however, Azer advised Quidel that Azer could order and place into service new automation machines to fill and cap 2 mL tubes, and that the new machines would enable Azer to fill and cap over one million 2 mL tubes per week for Quidel, per Quidel's need.

13.   Azer also advised Quidel that during the interim "lead time" for any such machines to be produced and delivered to Azer, Azer could manually fill and cap approximately 5,000 tubes per day until the automation was operational. Between March 4 and March 8, 2021, Azer described its processes for quality control testing its manually filled and capped tubes and Azer and Quidel discussed how many Quidel tubes and caps Azer would require to perform its sample testing. On March 12, 2021, Quidel emailed Azer to advise that Quidel had "shipped 200 tube and cap samples" to Azer at its warehouse in Morgantown, Pennsylvania.

---

[1] Hereinafter, and unless an individual is specifically identified, reference is made generally to "Azer" and "Quidel" as sender and/or recipient of emails and other correspondence. Upon information and belief, Kyra Bader, Hiva Ardalan, John Sanks, Kyle Richardson, and other individuals with Quidel email addresses were, at all relevant times, employees, agents, and/or representatives of Quidel, and made representations on Quidel's behalf.

**B.     Azer Requires At Least 12 Month Commitment from Quidel Before Azer Would Purchase and Install New Automation Equipment Needed to Satisfy Quidel's Order**

14.     On March 4, 2021, Azer further advised Quidel that Azer would require Quidel to commit to a minimum order of 48 million 2 mL tubes to be supplied over a 12 month period. Azer included information about the specialized automated filler/capper machines (hereinafter "automation equipment") that Azer would order and use if Quidel decided to place the order with Azer.

15.     On or about March 9, 2021, after email exchanges between Azer and Quidel regarding sample tubes and caps and quality control testing (described above), Azer emailed Quidel pricing proposals for: (1) a 12 month commitment to purchase 48 million 2 mL tubes; and (2) an 18-24 month commitment to purchase 96 million 2 mL tubes.

16.     Azer further stated that "[a]s soon as we have Quidel's commitment, we are going to move forward with the automation [equipment] with expectations that it will arrive in 7-8 weeks."

17.     Between March 9 and March 17, 2021, Azer and Quidel exchanged additional emails and telephone calls; Azer emailed Quidel an updated pricing proposal that included "lead times" to account for the time it would take for Azer to receive and install the new automation equipment; Azer advised that Quidel would have to ship approximately 5,000 tubes and caps to Azer so Quidel's tubes and caps could be tested with the automation equipment; Quidel proposed that Azer also produce the reagent solution (using Quidel's formula) that would ultimately fill the tubes, in addition to filling and capping the tubes which would be supplied by Quidel; and Azer advised Quidel that it would provide an updated quote incorporating the reagent solution formulation.

**C.     Quidel Accepts Azer's March 25 Offer with Express "Confirmation" of Quidel's 12 Month Commitment and Other Essential Terms and its Approval of Azer's Purchase of New Automation Equipment**

18. In a March 25, 2021 email, Azer stated that it would produce the reagent solution and fill 2.5 million tubes per week over a 12 month commitment period at the agreed-to price. Azer expressly asked Quidel "[p]lease confirm to [Azer] in writing that we are approved to order the [automation] equipment and that we have your commitment." A true and correct copy of the March 25, 2021 email exchange is attached hereto as Exhibit A.

19. In an email response the same day, Quidel confirmed the parties' contract: "***Please use this note as confirmation that we will be moving forward with the 2.5 [million]/week (10 [million]/month) commitment and to support Azer's order of [automation] equipment***." Ex. A (emphasis added).

20. In subsequent emails that day, Azer and Quidel further confirmed that the total amount of tubes that Azer would fill over the entire 12 month commitment period would be 120 million tubes. *Id.* (This March 25, 2021 email exchange is hereinafter "March 25 Agreement" or "March 25 contract").

**D.     Azer Purchases New Automation Equipment based on March 25 Agreement, including Quidel's 12 Month Commitment**

21. In reliance on the parties' March 25 Agreement, Azer purchased the automation equipment and then built and dedicated an additional room in its Morgantown, Pennsylvania warehouse, and hired additional staff. *Id. See also* Exhibit B (photographs of Azer warehouse room built and dedicated for the automation equipment).

22. And Azer informed Quidel that it had begun "to order all necessary components as well as the automation [equipment]" and that Azer looked forward to working with Quidel. *Id.*

E.  **Azer Rejects Draft Purchase Order; Quidel Confirms Draft Purchase Order Does Not Govern the March 25 Agreement**

23. On March 31, 2021, Quidel forwarded a draft purchase order – which included a forum selection provision that required any lawsuit against Quidel to be filed in California (implicitly recognizing that venue would otherwise be appropriate elsewhere) – and requested that Azer "review and provide confirmation" of the draft purchase order. Azer never accepted or assented to the terms of the March 31 draft purchase order and, indeed, expressly rejected the draft document.

24. Quidel also stated that it did not consider the draft purchase order – including its "standard" terms and conditions – to be binding or to otherwise govern any agreement between Azer and Quidel. Instead, Quidel "confirm[ed]" that a later supply agreement would adopt the essential terms of the parties' March 25 Agreement.

F.  **Quidel Sends Draft "Supply Agreement" Removing Agreed-Upon 12 Month Commitment Term**

25. On or about April 12, 2021, Quidel emailed Azer a draft document titled "Supply Agreement."

26. As noted, Azer understood that any supply agreement would adopt the essential terms of the March 25 Agreement that Azer and Quidel had already made and intended to be binding.

27. However, on or around May 20, 2021, Quidel emailed Azer a revised draft document, which included redline edits striking the 12 month commitment language. Upon information and belief, the redline edits were made on behalf of Quidel by employees, agents, and/or authorized representatives of Quidel.

28. Azer responded the next day: "*Quidel removed the 12-month commitment that we agreed-upon*. This project was launched on the basis of Quidel's 12-month commitment,

7

which is reflected in everything from Pricing to our Investment in equipment to help serve your needs long-term." (Emphasis added).

29. On June 21, 2021, Quidel breached the parties' contract, informing Azer that it would not satisfy its agreement to purchase tubes over the agreed-upon 12-month commitment period, in breach of the parties' contract.

## COUNT I – BREACH OF CONTRACT

30. Azer hereby incorporates paragraphs 1 through 29 as if fully set forth herein.

31. On March 25, 2021, Azer and Quidel entered into a valid, enforceable contract for the production of reagent solution and filling and capping of 120 million 2 mL tubes to be supplied by Azer and paid for by Quidel over a 12 month commitment period. *See* Ex. A.

32. On June 21, 2021, Quidel advised Azer that it would not purchase 120 million 2 mL tubes over the course of the 12 month commitment period.

33. Quidel's failure to purchase 120 million 2 mL tubes for the 12 month commitment period constitutes a breach of Quidel's obligations under the March 25 Agreement.

34. As a result of Quidel's breach of the March 25 Agreement, Azer has incurred substantial damages, including but not limited to, costs associated with purchasing specialized automation equipment, costs associated with dedicating significant company time and resources to the project, costs associated with the lost opportunity to take on other customers and orders, and other costs to be set forth after a protective order or confidentiality agreement is in place in this litigation.

**WHEREFORE**, Plaintiff Azer Scientific Incorporated respectfully requests that judgment be entered in its favor and against Defendant Quidel Corporation and asks this Court to declare that Quidel is in breach of the contract and award Azer specific performance, reliance

damages, incidental and consequential damages, special damages, liquidated damages, lost profits, delay damages, restitution, pre-judgment interest, attorneys' fees and costs, and any such other and further relief to which Azer may be entitled and/or as the Court shall deem just and equitable.

## COUNT II – ANTICIPATORY BREACH OF CONTRACT

35. Azer hereby incorporates paragraphs 1 through 34 as if fully set forth herein.

36. On March 25, 2021, Azer and Quidel entered into a valid, enforceable contract for the production of reagent solution and filling and capping of 120 million 2 mL tubes to be supplied by Azer and paid for by Quidel over a 12 month commitment period. *See* Ex. A.

37. On June 21, 2021, Quidel advised Azer that it would not purchase 120 million 2 mL tubes over the course of the 12-month commitment period.

38. Quidel's statements that it would not purchase 120 million 2 mL tubes over the course of the 12 month commitment period indicate that Quidel does not intend to recognize or honor the March 25 Agreement and constitute an unequivocal renunciation of its obligations under the March 25 Agreement.

39. As a result of Quidel's anticipatory breach of the March 25 Agreement, Azer has incurred substantial damages, including but not limited to, costs associated with purchasing specialized automation equipment, costs associated with dedicating significant company time and resources to the project, costs associated with the lost opportunity to take on other customers and orders, and other costs to be set forth after a protective order or confidentiality agreement is in place in this litigation.

**WHEREFORE**, Plaintiff Azer Scientific Incorporated respectfully requests that judgment be entered in its favor and against Defendant Quidel Corporation and asks this Court to

declare that Quidel's statements and actions constitute an anticipatory breach of the contract and award Azer specific performance, reliance damages, incidental and consequential damages, special damages, liquidated damages, lost profits, delay damages, restitution, pre-judgment interest, attorneys' fees and costs, and any such other and further relief to which Azer may be entitled and/or as the Court shall deem just and equitable.

## COUNT III – PROMISSORY ESTOPPEL

40. Azer hereby incorporates paragraphs 1 through 39 as if fully set forth herein.

41. On March 25, 2021, Quidel made a promise to Azer in the form of a written confirmation that Quidel would order a certain amount of product from Azer over a 12-month commitment period and that Azer could purchase the specialized automation equipment necessary to fulfill Quidel's order. *See* Ex. A.

42. Quidel made this promise in response to Azer's express requests for confirmation of Quidel's 12-month commitment and approval of Azer's purchase of the specialized automation equipment. Additionally, Azer communicated to Quidel in writing on numerous occasions before March 25, 2021 that Azer's agreement to fulfill Quidel's order, as well as Azer's purchase of the specialized automation equipment necessary to fulfill Quidel's order, was conditioned on Quidel's commitment to a 12 month period. Further, Quidel and Azer agreed that Azer would begin production to fulfil Quidel's order in or around June 2021. Thus, Quidel should have reasonably expected that its affirmative promise in response to Azer's March 25 request would induce Azer to act.

43. Azer was induced to act, and changed its position to its detriment, in reasonable reliance on Quidel's promise, including by purchasing the specialized automation equipment,

dedicating resources, incurring other expenses in preparing to fulfill Quidel's order, and forgoing other opportunities to prepare to fulfill Quidel's order.

44. Quidel's promise should be enforced to prevent injustice to Azer.

**WHEREFORE**, Plaintiff Azer Scientific Incorporated respectfully requests that judgment be entered in its favor and against Defendant Quidel Corporation and asks this Court to award Azer compensatory damages, reliance damages, incidental and consequential damages, lost profits, restitution, attorneys' fees and costs, pre-judgment interest, and any such other and further relief to which Azer Scientific Incorporated may be entitled and/or as the Court shall deem just and equitable.

### COUNT IV – QUANTUM MERUIT

45. Azer hereby incorporates paragraphs 1 through 44 as if fully set forth herein.

46. Azer conferred benefits on Quidel, including by virtue of Azer's production of reagent solution and its filling and capping services provided for Quidel.

47. Quidel appreciated such benefits.

48. Quidel accepted and retained such benefits under circumstances that would be inequitable for Quidel to retain such benefits without paying all monies due and owing to Azer.

**WHEREFORE**, Plaintiff Azer Scientific Incorporated respectfully requests that judgment be entered in its favor and against Defendant Quidel Corporation and asks this Court to award Azer compensatory damages, reliance damages, incidental and consequential damages, lost profits, restitution, attorneys' fees and costs, pre-judgment interest, and any such other and further relief to which Azer Scientific Incorporated may be entitled and/or as the Court shall deem just and equitable.

## COUNT V – UNJUST ENRICHMENT

49. Azer hereby incorporates paragraphs 1 through 48 as if fully set forth herein.

50. Azer conferred benefits on Quidel, including by virtue of Azer's production of reagent solution and its filling and capping services provided for Quidel.

51. Quidel appreciated such benefits.

52. Quidel accepted and retained such benefits under circumstances that would be inequitable for Quidel to retain such benefits without paying all monies due and owing to Azer.

**WHEREFORE**, Plaintiff Azer Scientific Incorporated respectfully requests that judgment be entered in its favor and against Defendant Quidel Corporation and asks this Court to award Azer compensatory damages, reliance damages, incidental and consequential damages, lost profits, restitution, attorneys' fees and costs, pre-judgment interest, and any such other and further relief to which Azer Scientific Incorporated may be entitled and/or as the Court shall deem just and equitable.

## COUNT VI – DECLARATORY JUDGMENT

53. Azer hereby incorporates paragraphs 1 through 52 as if fully set forth herein.

54. A contract exists between Azer and Quidel with respect to Azer's production of reagent solution and filling and capping of 120 million 2 mL tubes to be supplied by Azer and paid for by Quidel over a 12 month commitment period. *See* Ex. A.

55. Under the contract, Quidel is obligated to make payments to Azer over a period of 12 months for its production and supply of reagent and automated filling and supply of tubes.

56. An actual controversy has arisen and now exists with respect to Azer's rights and Quidel's obligations under the contract.

57. Accordingly, Azer requests a judicial declaration with respect to the existence of the contract and Azer's rights and Quidel's obligations thereunder.

**WHEREFORE**, Plaintiff Azer Scientific Incorporated respectfully requests that judgment be entered in its favor and against Defendant Quidel Corporation and asks this Court to:

    a.    Declare that Quidel breached the March 25, 2021 contract;

    b.    Declare that Quidel made statements and took actions constituting an anticipatory breach of the March 25, 2021 contract;

    c.    Declare that Azer is entitled to specific performance of the March 25, 2021 contract;

    d.    Declare that the March 25, 2021 contract is terminated as a result of Quidel's breach;

    e.    Declare that the March 31, 2021 draft purchase order does not govern any agreement between Azer and Quidel and is not binding on Azer;

    f.    Award Azer damages arising from such breach, including reliance damages, incidental and consequential damages, special damages, liquidated damages, lost profits, and delay damages;

    g.    Declare, in the alternative, that Quidel made a promise upon which Azer reasonably relied and was induced to act to its detriment and that Quidel's promise must be enforced;

    h.    Award Azer damages arising from Quidel's inducement, including reliance damages, compensatory damage, incidental and consequential damages, and lost profits;

    i.    Declare, in the alternative, that Quidel retained benefits conferred by Azer and Quidel was unjustly enriched thereby;

    j.    Award Azer restitution;

    k.    Award Azer its attorneys' fees and costs;

    l.    Award Azer pre-judgment interest; and

    m.    Order such other and further relief to which Azer may be entitled and/or as the Court shall deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Azer Scientific Incorporated hereby demands a jury trial on all issues and claims so triable.

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

Dated: September 10, 2021    By: _____
Ronald P. Schiller (Pa. Bar I.D. No. 41357)
Michael R. Carlson (Pa. Bar I.D. No. 89937)
Elizabeth C. Dolce (Pa. Bar I.D. No. 324448)
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568 6200
(215) 568 0300 facsimile
rschiller@hangley.com
mcarlson@hangley.com
edolce@hangley.com

*Counsel for Plaintiff*
*Azer Scientific Incorporated*