**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

—————————————————————

| | |
|---|---|
| AZER SCIENTIFIC INCORPORATED, | : |
|         Plaintiff, | : |
| | : |
|         v. | :    Civil No. 5:21-cv-02972-JMG |
| | : |
| QUIDEL CORPORATION, | : |
|         Defendant. | : |

—————————————————————

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                            **January  18, 2023**

Plaintiff Azer Scientific Incorporated alleges Defendant Quidel Corporation breached a contractual agreement the Parties formed over email.  Quidel contends the Parties never formed an enforceable contract.  In September of 2021, the Parties cross-moved for partial summary judgment.  On December 5, 2022, this Court found the Parties' email correspondence on March 25, 2021 amounts to a binding contract.  Thus, the Court found summary judgment appropriate in Azer's favor concerning the first element of Azer's breach of contract claim. The Court also granted summary judgment in favor of Quidel as to Azer's unjust enrichment claim.  The Court found summary judgment was not warranted as to the Parties' remaining breach of contract and declaratory judgment claims.  Accordingly, the Court granted in part and denied in part Quidel's Motion for Partial Summary Judgment, as well as it granted in part and denied in part Azer's Motion for Partial Summary Judgment.  Before the Court is Quidel's Motion for Reconsideration and, in the alternative, a Motion for Certification of an Interlocutory Appeal and Stay of Action regarding the Court's Order and Opinion granting partial summary judgment.  For the following reasons, Quidel's Motion for Reconsideration and its Motion for Certification of an Interlocutory Appeal will be denied.

## I.     FACTUAL BACKGROUND

Plaintiff Azer manufactures and supplies products for laboratories, including manual and automated tube-filling services.  Am. Compl., ECF No. 10 ¶2.  Defendant Quidel develops and manufactures diagnostic healthcare products.  Def. Partial Summ. J., ECF No. 47-1 ¶1.   In March 2021, the Parties began exploring a business relationship in which Azer would source certain materials for Quidel's COVID-19 test kits.   Joint Appendix, ECF No. 48-6 at JA1010, K.S. Richardson Dep. Tr. 24:3-19.   As a result of this business relationship, Azer alleges Quidel breached a contractual agreement the Parties formed over email.

On December 5, 2022, this Court denied in part and granted in part Quidel's Motion for Partial Summary Judgment, and denied in part and granted in part Azer's Motion for Partial Summary Judgment.  ECF No. 66 (Memorandum Opinion); ECF No. 67 (corresponding Order). In sum, this Court found the Parties' email correspondence on March 25, 2021 amounts to a binding contract.[1]  The lack of disputed facts concerning contract formation warranted a finding on summary judgment.[2]  Quidel takes issue with this Court's finding the Parties executed an

---

[1] Accordingly, this Court denied Quidel's Motion for Partial Summary Judgment concerning Azer's claims of breach of contract, anticipatory breach of contract, and declaratory judgment—all argued based on Quidel's main contention the Parties email correspondence did <u>not</u> amount to a binding contract.  And this Court granted summary judgment in favor of Quidel as to Azer's unjust enrichment claim.  Lastly, the Court granted Azer's Motion for Partial Summary Judgment concerning the first element of Azer's breach of contract claim—specifically, finding a binding contract existed.  Factual disputes prevented summary judgment as to the second element of Azer's breach of contract claim—breach—and its corresponding request for declaratory relief.  *See generally* ECF No. 66.

[2] In its Opinion, this Court found "the Parties agree on the underlying facts but not whether the facts support the existence of an enforceable contract formed on March 25, 2021."  ECF No. 66 at 12.  Thus "'[u]nder Pennsylvania law[,] where the facts are in dispute, the question of whether a contract was formed is for the jury to decide.'"  *Okna Windows v. Diversified Structural Composites*, No. CV 18-2444, 2019 WL 3777632, at *4 (E.D. Pa. Aug. 12, 2019) (citing *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 487 (E.D. Pa. 2018)).  "'However, [t]he question of whether an undisputed set of facts establishes a contract is a matter of law.'"  *Id.*

enforceable contract through their email correspondence on March 25, 2021.  Accordingly, twenty-five days after the Court filed its Memorandum Opinion ("the Opinion") and corresponding Order ("the Order") on the Parties' cross-motions for partial summary judgment (*see* ECF Nos. 66, 67), Quidel filed a Motion for Reconsideration and, in the alternative, a Motion for Certification of an Interlocutory Appeals and Stay of Action (*see* Def.'s Mot. for Recons., ECF No. 90).  Azer opposes both of Quidel's motions.  *See* Pl.'s Resp. in Opp'n. Def.'s Mot. for Recons., ECF No. 92.

## II.    LEGAL STANDARD

### a.    Motions for Reconsideration

#### i.    Procedural Rules

The Local Rules of Civil Procedure for the U.S. District Court for the Eastern District of Pennsylvania provide: "Motions for reconsideration . . . shall be served and filed within fourteen (14) days after the entry of the order concerned, other than those governed by Federal Rule of Civil Procedure 59(e)."  E.D. Pa. Local Rule 7.1(g) (emphasis added).  "Federal Rule of Civil Procedure 59(e) concerns motions to amend or alter a judgment and thus does not apply to interlocutory decisions."  *Robinson v. Fair Acres Geriatric Ctr.*, No. CV 15-06749, 2020 WL 1313721, at *15 (E.D. Pa. Mar. 20, 2020), *aff'd*, 842 F. App'x 779 (3d Cir. 2021) (citing *Bausch & Lomb Inc. v. Moria S.A.*, 222 F. Supp. 2d 616, 669 (E.D. Pa. 2002)).  And "[b]ecause partial summary judgment orders are interlocutory decisions, a party against whom summary judgment was entered against as to less than all claims against all parties may not seek relief under Rule 59(e)."  *Id.*  (citing FED. R. CIV. P. 54(b); *Berckeley Inv. Group, Ltd. v. Colkitt*, 259 F.3d 135, 143-44 (3d Cir. 2001)).

ii.  **Substantive Law**

"A motion for reconsideration requires the movant to show (1) an intervening change in the controlling law; (2) new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or prevent manifest injustice." *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 190 (3d Cir. 2021) (citing *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)).  "[M]otions for reconsideration may not be used to give a litigant a 'second bite at the apple.'" *United States ex rel. Sirls v. Kindred Healthcare, Inc.*, 536 F. Supp. 3d 1, 4 (E.D. Pa. 2021) (internal citations omitted).  And "[b]ecause of the interest in finality . . . courts should grant motions for reconsideration sparingly." *Bausch*, 222 F. Supp. 2d at  669 (citing *Rottmund v. Continental Assurance Co.*, 813 F.Supp. 1104, 1107 (E.D.Pa.1992)).  Here, Quidel avers reconsideration is proper due to the need to correct a clear error of law and prevent manifest injustice.

b.  **Motions for Certification of an Interlocutory Appeal**

"A district court has discretion under 28 U.S.C. § 1292(b) to decide whether or not to certify a case for immediate appeal." *Titelman v. Rite Aid Corp.*, No. CIV.A. 00-2865, 2002 WL 32351182, at *1 (E.D. Pa. Feb. 5, 2002) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir.1974) (en banc)).  Under Section 1292(b), a district court may certify an order for interlocutory appeal where: (1) the order ""involves a controlling question of law"; (2) "there is substantial ground for difference of opinion" on that question; and "an immediate appeal . . . may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  And yet, "[e]ven if the moving party satisfies the statutory criteria, the district court "possesses discretion to deny certification of an [interlocutory] appeal." *Knopick v. Downey*, 963 F. Supp. 2d 378, 398 (M.D. Pa. 2013) (internal citations omitted).  Furthermore, "[i]t has . . . been cautioned that

certification is the exception, to be used only in the rare case where an immediate appeal would avoid expensive and protracted litigation." *Titelman*, 2002 WL 32351182 at *1 (citing *Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir.1958); *Orson, Inc. v. Miramax Film Corp.*, 867 F.Supp. 319, 321 (E.D.Pa.1993)).

## III.    DISCUSSION

### a.    <u>Motion for Reconsideration</u>

The Court denies Quidel's Motion for Reconsideration because it is untimely under this district's local rules.  Further, Quidel does not meet the high standards movants must show to necessitate reconsideration.

#### i.    Timeliness

Under this district's local rules, Quidel had fourteen days to file its motion for reconsideration of the Court's Order and Opinion granting partial summary judgment.  E.D. Pa. Local Rule 7.1(g).  Quidel filed its Motion for Reconsideration twenty-five days after the Court filed its Opinion and corresponding Order. *See* ECF No. 90 (Quidel's Motion for Reconsideration filed on December 30, 2022); ECF No. 66, 67 (the Court's Memorandum Opinion and corresponding Order granting in part and denying in part Quidel and Azer's cross-motions for partial summary judgment on December 5, 2022).  Quidel claims its Motion for Reconsideration is timely, even under Local Rule 7.1(g), because the Rule's fourteen-day deadline does not govern motions "governed by Federal Rule of Civil Procedure 59(e)."  E.D. Pa. Local Rule 7.1(g); *see also* Def.'s Reply Br. in Supp. of Mot. for Recons., ECF No. 102 at 1-3.

The Court is not persuaded Quidel's Motion for Reconsideration is governed by Federal Rule of Civil Procedure 59(e).  Federal district courts in the Eastern District of Pennsylvania have found "Federal Rule of Civil Procedure 59(e) concerns motions to amend or alter a judgment and

thus does not apply to interlocutory decisions." *Robinson*, 2020 WL 1313721 at *15 (denying plaintiff's motion for reconsideration of the court's grant of partial summary judgment and resulting dismissal of two defendants because the motion of reconsideration was untimely under Local Rule 7.1(g)); *see also Bridges v. Colvin*, 136 F. Supp. 3d 620, 629 (E.D. Pa. 2015), *aff'd sub nom. Bridges v. Comm'r Soc. Sec.*, 672 F. App'x 162 (3d Cir. 2016) (finding Federal Rule of Civil Procedure 59(e) did not govern an appeal of an interlocutory order); *Jairett v. First Montauk Sec. Corp.*, 153 F. Supp. 2d 562, 579 (E.D. Pa. 2001) (finding Rule 59(e) did not apply to a motion for reconsideration seeking the court to reconsider an interlocutory decision).

In *Bridges v. Colvin*, the district court directly analyzed the present issue of whether Federal Rule of Civil Procedure 59(e)—or Federal Rule of Civil Procedure 60(b)—applied to plaintiff's motion for reconsideration.  136 F. Supp. 3d at 629.  The movant requested the court reconsider its dismissal of all but one count in an amended complaint.  *Id.*  The court found Rule 59(e) did not govern plaintiff's motion for reconsideration because the court's Order was not a "judgment" as defined by the Federal Rules of Civil Procedure.  *Id.*  "The Rules define the word 'judgment' to mean 'a decree and any order from which an appeal lies.'" *Id.* (citing FED. R. CIV. P. 54(a)).  The court found "[a]n order dismissing some, but not all, of a party's claims is neither a decree nor an order from which an appeal lies; rather, such an order is interlocutory in nature." *Id.* (citing *Andrews v. United States*, 373 U.S. 334, 340, (1963); *Pellicano v. Blue Cross Blue Shield Ass'n*, 540 Fed.Appx. 95, 97 n. 4 (3d Cir.2013) (internal citations omitted)).  And thus "neither Rule 59(e) nor 60(b) applies . . . because the order [plaintiff] seeks to have reconsidered is not a final judgment or order but rather an interlocutory decision."  *Id.* (citing *Jairett*, 153 F.Supp.2d at 579 (E.D.Pa.2001); *Am. Guar. & Liab. Ins. Co. v. Fojanin*i, 99 F.Supp.2d 558, 560 (E.D.Pa.2000)).

Here, the Court similarly finds Rule 59(e) does not apply to Quidel's Motion for Reconsideration of the Court's Order.  Quidel correctly asserts "district courts in this Circuit have considered motions for reconsideration of partial summary judgment under Rule 59(e)."  ECF No. 102 at 3.  But none of the cases Quidel cites in support of its assertion directly address the issue of whether Rule 59(e) applies to interlocutory orders or decisions.[3]  And the Court finds it persuasive that "[b]ecause partial summary judgment orders are interlocutory decisions, a party against whom summary judgment was entered against as to less than all claims against all parties may not seek relief under Rule 59(e)."  *Robinson*, 2020 WL 1313721, at *15 (citing Fed. R. Civ. P. 54(b); *Berckeley*, 259 F.3d at 143-44).

Because Rule 59(e) does not govern Quidel's Motion for Reconsideration in this case, Quidel's filing of its Motion for Reconsideration beyond the local rules' fourteen-day deadline is untimely.  Thus the Court has discretion over whether to reach the merits of Quidel's motion given it is more than nine days late, filed a few weeks before trial, and provides no reasoning for the delay.[4]

---

[3] *See generally e.g.*, *Maxwell v. Nutter*, No. CIV.A. 11-7565, 2015 WL 3536581 (E.D. Pa. June 4, 2015); *Stroud v. Boorstein*, No. CIV.A. 10-3355, 2014 WL 2957708, at *4 (E.D. Pa. June 30, 2014); *Gen. Refractories Co. v. Travelers Ins. Co.*, No. CIV. A. 88-2167, 1999 WL 80287 (E.D. Pa. Feb. 4, 1999); *Est. of Schultz v. Potter*, No. CIV.A. 05-1169, 2008 WL 4790653 (W.D. Pa. Oct. 30, 2008), *aff'd in part, remanded in part*, 349 F. App'x 712 (3d Cir. 2009); *Dougherty v. Farmers New Century Ins. Co.*, No. 3:CV 06-98, 2007 WL 9758445, at *7 (M.D. Pa. June 27, 2007).  In fact, one of the cases Quidel cites acknowledges motions for reconsideration of orders granting summary judgment are interlocutory and thus Rule 59(e) or Rule 60(b) do not apply.  *See Stroud*, 2014 WL 2957708, at *2 n. 5 (citing *Young v. Sch. Dist. of Phila.*, No. 06–4485, 2010 U.S. Dist. LEXIS 24733, at *3–4, 2010 WL 1006724 (E.D.Pa. Mar. 16, 2010)).

[4] *See Bridges*, 136 F. Supp. 3d at 629 (finding "[t]he Court need not reach the merits of Plaintiff's motion for reconsideration . . . because Plaintiff's motion is untimely").  136 F. Supp. 3d at 629.  In *Bridges*, the plaintiff filed a motion to reconsider one day late.  *Id.*  And, as with Quidel, "[p]laintiff neither acknowledge[d] that his motion [was] untimely nor attempt[ed] to invoke the Court's discretion to depart from the local procedural rules."  *Id.*  The court found the one-day delay enabled the Court to "deny Plaintiff's motion on this basis."  *Id.*  Nevertheless, the court

### ii. Clear Error

Even assuming the timeliness of Quidel's Motion for Reconsideration, Quidel's factual and legal arguments do not meet the clear error standard required to reconsider the outcome. Accordingly, granting reconsideration of this issue is not warranted.

Quidel emphasizes, when ruling on a motion for summary judgment, a district court must "view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  ECF No. 66 at 10 (citing *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020)).  Quidel also provides "summary judgment must be denied if there is evidence on which a 'reasonable jury could return a verdict for the nonmoving party.'"  *Id.* Thus, Quidel's main argument the Court's Opinion contains clear errors of law and fact rests on its assertion a reasonable jury could find <u>no</u> contract was formed on March 25, 2021.  ECF No. 90 at 9.  Quidel points to facts in the record it avers show: (1) Quidel, through Ms. Kyra Bader, had no intent to be bound by the contract, (2) Quidel needed higher-up approval for a twelve-month commitment, (3) the existence of disputed facts, and (4) the need to consider the Parties' pre- and post-March 25, 2021 conduct.

First, Quidel avers a reasonable jury could find Quidel, through its agent Ms. Bader, did not intend to enter a contract on March 25, 2021.  Quidel points to the Court's findings in its Opinion to show a factual dispute concerning Ms. Bader's intent.[5]  But, as Azer correctly asserts,

---

provided brief analysis on the motion for reconsideration's standards to find "no clear error of law or manifest injustice in the Order, nor any other basis to reconsider the outcome."  *Id.*

[5]     Quidel provides, "Specifically, the Court wrote 'Mr. Ardekani later testified he believed the commitment was a contract at the time of receiving Ms. Bader's email response. . . . ***On the other hand***, Ms. Bader later testified her written confirmation 'was to confirm the volume and moving forward with the process of ordering the equipment and the qualification of Azer.'" ECF No. 90 at 9-10 (citing ECF No. 66 at 6, n.8)).  But Quidel failed to provide the subsequent sentence in the Court's Opinion: "Ms. Bader also acknowledged that, 'as a result of this email, Azer relied

facts concerning Ms. Bader's <u>subjective</u> intent do not undermine the Court's finding of a binding contract.[6]

Next, Quidel submits a reasonable jury could find Quidel expressed the need for conditions—more specifically, approval from higher-ups—before entering a contract concerning a twelve-month "commitment" for the price, subject matter, and quantity described in the emails. *See* ECF No. 90 at 10.  Quidel points to numerous correspondence around March 17, 2021 expressing Quidel's desire for certain conditions (such as higher-up approval, coordination of a supply agreement, etc.), but none of these communications prevent Quidel from committing to the essential terms as expressed on March 25, 2021.  *See id.* at 10-11.  On March 25, 2021, Azer explicitly requested Quidel's written confirmation and commitment to move forward with the project; and Quidel sent written confirmation with no subsequent communication suggesting internal approval was still pending nor required.[7]  The Parties' continued discussions and negotiations concerning supply agreements and purchase orders do not negate the Parties' ability to enter a contract on March 25, 2021.  *See* ECF No. 92 at 8 ("[A] contract is formed even though

---

on Quidel's commitment for a volume of 2.5 million per week, 10 million per month."  ECF No. 66 at 6, n.8.  Ms. Bader's subjective intent is minimally relevant to the contract formation issue. And, nevertheless, the Court considered these facts in its finding the Parties agreed to the subject matter, quantity, duration, and price to form a contract on March 25, 2021.

[6] ECF No. 92 at 9.  "In assessing intent, the object of inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior."  *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir.2009) (citing *Ingrassia Constr. Co., Inc. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. Ct. 1984)).  "Accordingly, a true and actual meeting of the minds is not necessary to form a contract."  *Id.*

[7] *See* ECF No. 66 at 14.  The Court also finds Azer's contention persuasive that Ms. Bader had "apparent authority" to bind Quidel on March 25, 2021 (*see* ECF No. 92 at 10) and "Quidel internally approved the terms of the March 25 contract four days later" (*id.* at 11).  *See In re Rotavirus Vaccines Antitrust Litig.*, 30 F.4th 148, 157 (3d Cir. 2022) ("In Pennsylvania, 'apparent authority [may] be established with a showing of: (1) limited authority given to the agent by the principal; and (2) conduct of the agent which demonstrates to the third-party the agent's apparent authority to bind the principal.'") (internal citation omitted)).

[the parties] intend to adopt a formal document with additional terms at a later date.") (quoting *Storms v. O'Malley*, 779 A.2d 548, 557 (Pa. Super. Ct. 2001) (internal citations omitted)).

Quidel also contends the Court overlooked various factual disputes. *See* ECF No. 90 at 12-13. But the disputed facts raised largely concern: (1) the <u>subjective</u> intent of Quidel's employee concerning entering the contract, and (2) the Parties' post-March 25, 2021 conduct. *See id.* As stated, the subjective intent of the Parties is not material to the formation of a contract. And similarly, the circumstances of the Parties' post-March 25, 2021 behavior is minimally relevant because: (1) the facts merely show the Parties engaging in further negotiations of terms in the form of purchase orders and supply agreements—which is behavior that does not necessarily contradict a pre-existing contract containing the agreement's essential terms—and (2) Quidel cites to cases with <u>implied</u> contracts—not express written contracts—to conclude a party's pre-and post-contract behavior is relevant to determine an objective manifestation of assent. *See e.g., Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*, 388 F. Supp. 3d 417 (E.D. Pa. 2019) (determining whether a "series of interactions and communications between the parties" created an <u>implied-in-fact</u> contract between the parties). And further, the Court did address the Parties' pre-and post-contract behavior and found it to be consistent with the formation of a contract containing essential terms on March 25, 2021. *See* ECF No. 66 at 15-16 n. 14.

Therefore, Quidel raises factual and legal arguments previously considered and analyzed by the Court in its Opinion. The Court applied the proper legal standards to the facts at issue. Thus the Court is not inclined to give Quidel "a second bite at the apple" concerning its arguments raised at summary judgment. *Kindred*, 536 F. Supp. 3d at 4 (E.D. Pa. 2021).

### iii.   Necessary to Prevent Manifest Injustice

Quidel further submits, in the event the Court does not find clear error, the Court needs to specify the terms of the contract "to prevent manifest injustice."[8]  On the other hand, Azer contends a clarification of the contract's terms is unnecessary because ". . . the emails speak for themselves." ECF No. 92 at 11.  For the Court to find manifest injustice, there must be "a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy."  *Sims Buick-GMC Truck, Inc. v. Gen. Motors LLC*, No. 4:14 CV 2238, 2017 WL 7792553, at *3 (N.D. Ohio Mar. 1, 2017), *aff'd*, 876 F.3d 182 (6th Cir. 2017) (citing *In re Bunting Bearings Corp.*, 321 B.R. 420, 423 (N.D. Ohio)).

In its Opinion, the Court provided "[t]he Parties' March 25, 2021 email exchange amounts to a valid contract because the Parties intended to be bound to a commitment containing clear and sufficiently definite essential terms."  ECF No. 66 at 16.  The Court did not explicitly outline the total price of the contract besides acknowledging the Parties considered formal pricing proposals throughout emails before, and on the day of, March 25, 2021.  *See e.g.*, ECF No. 66 at 3 n. 2, 4 n. 6, 5, 14 n. 13.  The March 25, 2021 emails make clear Azer would supply Quidel with 2.5 million tubes per week (or ten million tubes per month) for twelve months.  *Id.* at 5-6.  And the March 25, 2021 emails include Azer's formal pricing proposal.  *Id.* at 5 (citing ECF No. 48-4 at JA176-77).

---

[8] Specifically, Quidel argues:

> [T]he Court [should] amend or alter its Opinion and Order to provide clarity regarding the sources and complete terms of the parties' purported March 25 email contract.  Without that clarification, Quidel will suffer manifest injustice as it is forced to try a case without understanding the full implications of the Court['s][*sic*] summary judgment ruling.

ECF No. 90 at 16-17.

The record—including the Parties' email correspondence on March 23rd, March 24th, and March 25th—shows the Parties consistently provided quotes for tube filling and reagent formation at a rate of $0.0808 per tube for the filling, and a rate of $0.007175 for the reagent formulation—for a subtotal of $0.087975 per tube.[9]   At a rate of $0.087975 per tube, as agreed to by the Parties, the total contract price for 120 million tubes over twelve months would equal $10,557,000.00.  This total contract price is consistent with Azer's proffered total contract price in its Motion for Partial Summary Judgment (*see* ECF No. 48-1 at 9) and its Motion in Opposition of Quidel's Motion for Reconsideration (*see* ECF No. 92 at 12).  While the Court did not include this exact calculation in its Opinion, the Parties can calculate the price based on the Parties' emails referenced in the Opinion and included in the record.  It is unclear why Quidel's need for clarification on this issue would rise to the standard of "manifest injustice" and thus necessitate reconsideration.

### iv.  Conclusion

In sum, Quidel raises factual issues and legal arguments previously considered by the Court in its Opinion.  The Court does not find its analyses of these issues meet a standard of clear error nor manifest injustice to warrant reconsideration.  Given the high burden on the movant—as well

---

[9] Admittedly, the contract's cost breakdown and total price are a little tangled throughout the Parties' email correspondence.  Concerning the cost breakdown, Azer's formal quotes (*see* ECF No. 48-4 at JA165 (March 23, 2021 correspondence); JA172; and JA177)) show the filling costs in a "price per case" measurement instead of the "price per tube" measurement used for the reagent formation.  But Azer's Statement of Undisputed Facts provides the "price per case" cost of $404.00 for the rate of filling is consistent with a "price per tube" cost of $0.0808—a rate repeatedly acknowledged by the Parties.  *See* ECF No. 48-2 at 8 n. 5; *see e.g.*, ECF No. 48-4 at JA165 (formal quote) *compare id.* at JA167 (email with chart quotes showing $0.0808).  Next, the total calculations shown in Azer's Azer's formal quotes—and scrutinized by Quidel in its Motion for Reconsideration (*see* ECF No. 90 at 16)—are higher than the total contract amount put forward by Azer because the formal quotes provide a different quantity (156 million tubes) than what is ultimately agreed upon (120 million tubes).

as established policy against providing litigants a chance to relitigate issues—the Court denies Quidel's Motion for Reconsideration.

**b.   <u>Motion for Certification of an Interlocutory Appeal and Stay of this Action</u>**

In the event the Court denies Quidel's Motion for Reconsideration, Quidel moves for an order certifying an interlocutory appeal of the Court's Order and Opinion to the U.S. Court of Appeals for the Third Circuit and a stay of this action pending resolution of the appeal. *See* 28 U.S.C. § 1292(b). The Court finds Quidel has likewise failed to meet its heavy burden under Section 1292(b).

As stated, a district court may certify an order for interlocutory appeal where: (1) the order "involves a controlling question of law"; (2) "there is substantial ground for difference of opinion" on that question; and "an immediate appeal . . . may materially advance the ultimate termination of the litigation." *Id.* "The moving party bears the burden of demonstrating that 'exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment.'" *Titelman*, 2002 WL 32351182, at *1 (quoting *Rottmund*, 813 F.Supp. at 1112).

**i.   Controlling Question of Law**

"With respect to the first element, an interlocutory Order 'involves a controlling question of law if either (1) an incorrect disposition would constitute reversible error if presented on final appeal, or (2) the question is 'serious to the conduct of the litigation either practically or legally.'" *Marcelle v. City of Allentown*, No. 07-CV-4376, 2010 WL 3606405, at *2 (E.D. Pa. Sept. 16, 2010) (internal citation omitted).   Quidel contends the Court erred in its Opinion because "[(1)] reasonable minds could differ as to whether both parties manifested an intent to be bound by two March 25, 2021 emails and [(2)] whether those two emails include all of the essential terms."   ECF

13

No. 90 at 18.  If the U.S. Court of Appeals reversed the Court's findings on these questions, the Court would be required to reverse and remand its Opinion granting summary judgment on the first element of the breach of contract claim, as well as Azer's unjust enrichment claim.  Quidel also asserts the contract issue is "serious to the conduct of the litigation either practically or legally" because the existence of a contract goes to the heart of the present matter and thus greatly impacts the structure and content of trial.  *Id.*

Nevertheless, the U.S. Court of Appeals for the Third Circuit has also found Section 1292(b) "is not designed for review of factual matters but addresses itself to a 'controlling question of law.'"  *Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860, 863 (3d Cir. 1977).  And "[c]ourts in this district have held that although a question appears to be a controlling question of law, questions about a district court's application of facts of the case to established legal standards are not controlling questions of law for purposes of section 1292(b)."  *Juice Ent., LLC v. Live Nation Ent., Inc.*, 353 F. Supp. 3d 309, 312–13 (D.N.J. 2018) (internal citations omitted).  In the present action, this Court applied established legal standards to the highly factual issue of contract formation. *See* ECF No. 66 at 12-17.  Thus the Court's fact-dependent analysis would likely not be considered a controlling question of law under Section 1292(b).

### ii.  Substantial Ground for Difference of Opinion

Next, "[a] 'substantial ground for difference of opinion' must arise out of doubt as to the correct legal standard, such as conflicting precedent, the absence of controlling law, or complex statutory interpretation."  *Consumer Fin. Prot. Bureau v. Navient Corp.*, 522 F. Supp. 3d 107, 113 (M.D. Pa. 2021).  The elements of breach of contract claims are well established under Pennsylvania law and thus do not present a substantial ground for difference of opinion.  *See e.g.*, *Arrington v. Sweet Home Primary Care, LLC*, No. CV 21-2677, 2022 WL 3647821, at *3 (E.D.

Pa. Aug. 24, 2022) ("Under Pennsylvania law, '[i]t is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages.'"); *Turner v. Nunez*, No. 19-CV-5489, 2019 WL 6353231, at *2 (E.D. Pa. Nov. 26, 2019) ("In Pennsylvania, as elsewhere, it is well-established that the first of three elements needed to prevail on a breach of contract action is the existence of a contract."). And "[w]hether a set of facts establishes a contract is a legal determination." *MCMP Inc. v. Gelman*, No. 1386 WDA 2016, 2017 WL 4861626, at *3 (Pa. Super. Ct. Oct. 26, 2017) (internal citation omitted). Quidel does not show a substantial ground for difference of opinion on the present contract formation issue—Quidel merely disputes the Court's application of settled law to the facts at issue. Likewise, Quidel's contention "the Court overlooked/and or ignored key evidence concerning the parties' intent, and further failed to describe what 'sufficient definite essential terms' were included in the contract'" does not present a substantial ground for difference of opinion—and merely attempts to relitigate its previous arguments. ECF No. 90 at 19; *see also United States v. NYSARC, Inc.*, No. 03 CIV. 7250 (SHS), 2010 WL 11583434, at *1 (S.D.N.Y. Nov. 17, 2010) ("Section 1292(b) is not a vehicle for relitigating a panoply of arguments already made before this Court."). Thus this factor weighs against granting an interlocutory appeal.

### iii.   Materially Advance the Ultimate Termination of the Litigation

"Finally, a [Section] 1292(b) certification 'materially advances the ultimate termination of the litigation' where the interlocutory appeal eliminates: '(1) the need for trial; (2) complex issues that would complicate the trial; or (3) issues that would make discovery more costly or burdensome.'" *Consumer*, 522 F. Supp. 3d at 114. Quidel avers a reversal of the Court's finding of an enforceable contract could cause the Parties to "re-try the case" and thus waste judicial time

and resources on the upcoming trial.  ECF No. 90 at 20.  But the possibility of a second trial—on its own—is not sufficient to grant an immediate appeal.  *Titelman*, 2002 WL 32351182, at *3 ("Although some duplicative discovery and even a second trial might occur if the Court's Order is overturned on appeal after the contract claims have been fully adjudicated, this possibility must be weighed against the possibility that the Third Circuit would not reverse, meaning that the case would be unnecessarily delayed pending the interlocutory appeal.").

The quickly approaching trial date also cuts against Quidel.  "Where discovery is complete and the case is ready for trial[,] an interlocutory appeal can hardly advance the ultimate termination of the litigation."  *Rottmund*, 813 F. Supp. at 1112 (citing *Caldwell v. Seaboard Coastline R.R.*, 435 F.Supp. 310, 312 (W.D.N.C.1977); *see also Lorentz v. Westinghouse Elec. Corp.*, 472 F.Supp. 954, 956 (W.D.Pa.1979) (denying certification when discovery was complete and the trial date fell two months away)).  And "[t]here are numerous cases where the courts have refused certification for interlocutory orders because the question involved in the interlocutory appeal was only one of many triable issues."  *Lorentz*, 472 F. Supp. at 956 (collecting cases).  Here, the Parties have completed discovery and are preparing for a trial to take place in less than three weeks.  Issues surrounding Azer's breach of contract claim and damages remain.  Therefore, Quidel has not met its burden to show an immediate appeal materially advances the ultimate termination of litigation in this matter.

### iv.  Conclusion

Therefore, the Court denies Quidel's Motion for Interlocutory Appeal because Quidel has not satisfied its statutory burden nor presented "an exceptional circumstance" to depart from the Court's litigation timeline.

## IV.    CONCLUSION

This Court finds Quidel has not met its statutory and legal burdens as to both its Motion for Reconsideration and its Motion for Certification of an Interlocutory Appeal and Stay of Action. Accordingly, the Court denies both motions.

An appropriate Order follows.


BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge