IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| AZER SCIENTIFIC INCORPORATED, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:21-cv-02972-JMG |
| | : | |
| QUIDEL CORPORATION, | : | |
| Defendant. | : | |

_____

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                                           **July 20, 2023**

On March 25, 2021 Azer and Quidel entered into a contract for Azer to fill, cap, and manufacture reagent for 120 million two mL tubes over a period of twelve months at a price of $0.087975 per tube and a total contract price of $10,557.000.00. At trial starting on February 3, 2023, a jury considered whether there was a breach of contract and, if so, whether damages were warranted for the breach. Azer contended Quidel breached the Parties' contract on June 21, 2021, when Quidel's Hiva Ardalan informed Azer's representatives Quidel would not perform the terms of the March 25, 2021 contract. On the other hand, Quidel averred it did not breach the contract and Azer could not perform the contract at the time of the alleged breach.

During trial, Azer moved to preclude one of Quidel's experts, Kristin Flanagan, who Quidel anticipated calling as an expert damages witness. And, upon the close of evidence, both Azer and Quidel moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).

On February 8, 2023, the jury found Quidel breached the contract and awarded Azer a damages award of $8,521,609.00. Azer then moved to alter judgment to include prejudgment

interest from the time of breach under Pennsylvania law, as well as post-judgment interest under federal law.

For the following reasons, Azer's Motion to Preclude Quidel's Witness Flanagan (ECF No. 120) is denied as moot. Furthermore, Quidel's Motion for Judgment as a Matter of Law (ECF No. 127) is denied; and Azer's Motion for Judgment as a Matter of Law (ECF No. 128) is denied. Lastly, Azer's Motion to Alter Judgment as to Inclusion of Pre- and Post-Judgment Interest (ECF No. 133) is granted.

1. **FACTUAL BACKGROUND**

On March 25, 2021 Azer and Quidel entered into a contract for Azer to fill, cap, and manufacture reagent for 120 million two mL tubes over a period of twelve months at a price of $0.087975 per tube and a total contract price of $10,557.000.00. *See* Mem. Op., ECF No. 103 at 12; *see also* Mem. Op., ECF No. 66 at 15-16.

At trial, a jury considered whether there was a breach of contract and, if so, whether damages were warranted for the breach. Azer contended Quidel breached the Parties' contract on June 21, 2021, when Quidel's Hiva Ardalan informed Azer's representatives Quidel would not perform the terms of the March 25, 2021 contract. *See e.g.*, Jury Trial Day One Transcript, ECF No. 137 at 56-57 (Mr. Schiller Opening Statement); Pl.'s Pretrial Mem., ECF No. 65 at 8 ("By June 21, Quidel had informed Azer that Quidel would not be moving forward with the project as outlined in the [P]arties['][sic] March 25 agreement."). To support their theory of breach and damages, Azer presented evidence in the form of fact and expert witnesses, including, inter alia, Reza Ardekani, Adam Ardekani, Hiva Ardalan, Matthias Szcepanek, and Jeffrey Buchakjian.

On the other hand, Quidel averred it did not breach the contract. *See e.g.*, Jury Trial Day One Transcript, ECF No. 136 at 118-19 (Mr. Schweder Opening Statement). Furthermore, Quidel contended Azer could not perform the contract at that time. *See e.g. id.* at 118 (Mr. Schweder Opening Statement). In support of their defenses and theories, Quidel proffered the following fact witnesses, inter alia, Hiva Ardalan and Kyra Bader.

On February 2, 2023, Azer moved to preclude one of Quidel's experts, Kristin Flanagan, who Quidel anticipated calling as an expert damages witness. *See* Pl.'s Mot. To Preclude Quidel's Expert Witness Flanagan, ECF No. 120; *see also* Def.'s Pretrial Mem., ECF No. 64 at 12. Azer moved to preclude portions of Ms. Flanagan's testimony at trial, including testimony "(1) regarding the purported 'indirect costs' based upon an estimate provided to her by Kevin Richardson and Todd Manke; and (2) regarding her calculation of damages based upon the early termination provision in the draft supply agreements." ECF No. 120 at 1. Quidel did not ultimately proffer Ms. Flanagan as an expert at trial.

Following the close of evidence and closing statements, both Azer and Quidel moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). *See* Pl.'s Mot. For Judgment as a Matter of Law, ECF No. 127; Def.'s Mot. For Judgment as a Matter of Law, ECF No. 128. In its motion, Azer avers judgment of a matter of law is warranted in Azer's favor concerning (1) Quidel's mitigation affirmative defense; (2) Quidel's breach of contract and/or repudiation claim; and (3) Quidel's breach of the March 25, 2021 contract. *See generally* ECF No. 127. On the other hand, Quidel submits judgment as a matter of law is warranted in its favor because no reasonable jury could find: (1) Quidel breached the March 25, 2021 contract; (2) Quidel anticipatorily breached the March 25, 2021 contract; nor that (3) Azer proved damages to the requisite degree of certainty. *See generally* ECF No. 128.

On February 8, 2023, the jury was tasked with determining whether Quidel breached its March 25, 2021 contract with Azer, and if so, what amount of money damages, if any, Azer was entitled to receive minus any amount Azer could have avoided or reduced through mitigation efforts. *See* Verdict Form, ECF No. 132; *see also* Jury Trial Day Four Transcript, ECF No. 139 at 123 (providing Azer must prove ". . . Quidel absolutely and unequivocally refused to perform its duties under the contract . . . and Azer would have been able to fulfill its obligations under the contract.") (Jury Instructions). The jury found Quidel breached the contract. ECF No. 132. And the jury provided a damages award of $8,521,609.00. *See id.* On February 13, 2023, Azer moved to alter judgment to include pre- and post-judgment interest. *See* Pl.'s Mot. to Alter Judgment, ECF No. 133.

Presently before the Court is: (1) Azer's Motion to Preclude Quidel's Witness Flanagan; (2) Quidel's Motion for Judgment as a Matter of law; (3) Azer's Motion for Judgment as a Matter of Law; and (4) Azer's Motion to Alter Judgment as to Inclusion of Pre- and Post-Judgment Interest.

2. **LEGAL STANDARDS**
    a. <u>Motion for Judgement as a Matter of Law</u>

Under Federal Rule of Civil Procedure 50(a), after "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." FED. R. CIV. P. 50(a)(1). In deciding whether to grant a motion for judgment as a matter of law, "the trial court must view the evidence in the light most favorable to the non-moving party, and determine whether the record contains the 'minimum quantum of evidence from which

4

a jury might reasonably afford relief.'" *Keith v. Truck v. Stops Corp.*, 909 F.2d 743, 745 (3d Cir. 1990) (citations omitted). The court may not weigh evidence, determine the credibility of witnesses or substitute its version of the facts for that of the jury. *Blair v. Manhattan Life Ins. Co.*, 692 F.2d 296, 300 (3d Cir. 1982).

      b. <u>Motion for Prejudgment Interest</u>

"State law governs awards of prejudgment interest in federal diversity actions." *Edwards v. Wyatt*, 330 F. App'x 342, 352 (3d Cir. 2009) (citing *Liberty Lincoln–Mercury v. Ford Motor Co.*, 134 F.3d 557, 574 (3d Cir.1998)). And, "[u]nder Pennsylvania law, the award of pre-judgment interest in contract actions is not discretionary." *Id.* (citing *Buford v. Wilmington Trust Co.*, 841 F.2d 51, 56–57 (3d Cir.1988)). More specifically, "Pennsylvania has followed the Restatement (Second) of Contracts [Section] 354, which provides: If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled." *Alumisource Corp. v. Kantner Iron & Steel, Inc.*, 279 A.3d 1270 (Pa. Super. Ct. 2022), *reargument denied* (Aug. 2, 2022) (citing *Krishnan v. Cutler Group*, Inc., 171 A.3d 856, 874 (Pa. Super. 2017) (quoting Restatement (Second) of Contracts § 354)). And comments to Section 354 provide, "Unless otherwise agreement, interest is always recoverable for the non-payment of money once payment has become due and there has been a breach . . . The sum due is sufficiently definite if it is ascertainable from the terms of the contract . . ." *Id.* (quoting Restatement (Second) of Contracts §354 cmt. c; and citing *Krishnan*, 171 A.3d at 874).

    c.   Motion for Post-Judgment Interest

"28 U.S.C. § 1961 provides that '[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court.'" *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 216 (3d Cir. 2004) (quoting 28 U.S.C § 1961 (2000)). This interest, called "[p]ost-judgment interest[,] is typically understood as 'compensation to ensure that a money judgment will be worth the same when it is actually received as it was when it was awarded.'" *Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 174 (3d Cir. 2010) (quoting *Dunn v. HOVIC*, 13 F.3d 58, 60 (3d Cir.1993)). And the U.S. Court of Appeals for the Third Circuit has found post-judgment interest begins to run when a district court enters an order quantifying the amount of prejudgment interest owed. *See id.* at 174-75.

**3.   DISCUSSION**

Presently before the Court is: (1) Azer's Motion to Preclude Quidel's Witness Flanagan; (2) Quidel's Motion for Judgment as a Matter of Law; (3) Azer's Motion for Judgment as a Matter of Law; and (4) Azer's Motion to Alter Judgment as to Inclusion of Pre- and Post-Judgment Interest. The Court will consider these motions in seriatim.

    a.   Azer's Motion to Preclude Quidel's Witness Flanagan

Azer moved to preclude Quidel's witness Flanagan because, it averred, earlier rulings from the Court precluded Ms. Flanagan from providing testimony on "(1) . . . 'indirect costs' based upon an estimate provided to her by [Quidel's] Kevin Richardson and Todd Manke; and (2) . . . her calculation of damages based upon an early termination provision in the draft supply agreements." ECF No. 120 at 1. Nevertheless, Quidel did not proffer Ms. Flanagan as a witness at trial. Therefore, Azer's motion to preclude portions of Quidel's Witness Flanagan is denied as moot.

b. <u>Motions for Judgement as a Matter of Law</u>

At the close of evidence, both Azer and Quidel moved for judgment as a matter of law. ECF Nos. 127, 128. The Court first considers Azer's motion for judgment as a matter of law before assessing Quidel's motion.

i. *Azer's Motion for Judgment as a Matter of Law*

Azer moves for judgment as a matter of law on three issues, averring judgment of a matter of law is warranted in Azer's favor concerning (1) Quidel's mitigation affirmative defense; (2) Quidel's breach of contract and/or repudiation claim; and (3) Quidel's breach of the March 25, 2021 contract. *See generally* ECF No. 127.

First, concerning the mitigation affirmative defense, Azer avers Quidel did not meet its evidentiary burden concerning Azer's failure to mitigate. "The burden to prove this duty to mitigate is placed on the party who actually breaches the contract; the breaching party must show how further loss could have been avoided through the reasonable efforts of the injured party." *Somerset Cmty. Hosp. v. Allan B. Mitchell & Assocs., Inc.*, 685 A.2d 141, 150 (Pa. 1996). So, Azer avers, Quidel needed to present evidence regarding (1) what Azer should have done to mitigate, (2) how those actions would have reduced the damages, and, importantly, (3) the amount that Azer could have reasonably reduced its damages through these actions. *See* ECF No. 127-1 at 3 (quoting *Walney v. SWEPI LP*, 596 F. Supp. 3d 544, 554 (W.D. Pa 2022)). But Ms. Bader offered testimony concerning the machines at use in this contract, including their customized nature, although, in her opinion, the machines could be used to fill other units. Jury Trial Day Three Transcript, ECF No. 138 at 99-102 (K. Bader Testimony). The jury also heard testimony from Mr. Adam Ardekani concerning the difficulty of finding a buyer and generally reselling the machines following the breach. *See* Jury Trial Day Two Transcript, ECF No. 137 at 193-94 (A.

7

Ardekani Testimony) (testifying Azer never tried to sell the machines and/or never found a buyer for the machines at issue because of the highly specialized nature of the machines). These witnesses' testimony does not amount to speculation because both witnesses worked in close proximity to Azer's performance of the Parties' contract; thus these witnesses had personal knowledge of the machines, the machines' ability to carry out the project at issue, and general demand for machines used in production. *See Meyer v. Delaware Valley Lift Truck, Inc.*, No. CV 18-1118, 2019 WL 2903666, at *2 (E.D. Pa. July 5, 2019) ("Fact witnesses testify based on "personal knowledge of the matter" in question . . . .") (citing *Keiser v. Borough of Carlisle*, 2017 4075057, at *3 (M.D. Pa. Sept. 14, 2017) (quoting FED. R. EVID. 602)).

Here, in the light most favorable to Quidel, the record thus contains the "minimum quantum of evidence from which a jury might reasonably afford relief'" concerning Azer's ability and actual efforts to mitigate costs in this matter. *Keith*, 909 F.2d at 745. The jury—not the Court—is tasked with determining the accuracy, credibility, and weight of the testimony. *See* Blair, 692 F.2d at 300. Judgment as a matter of law is not warranted concerning Quidel's mitigation affirmative defense.

Next, Azer contends it is entitled to judgment as a matter of law on Quidel's breach of contract and/or repudiation claims. At trial, Quidel averred it did not breach the contract, and moreover, that Azer could not perform the contract at the time it alleged Quidel breached. *See e.g.*, Jury Trial Day One Transcript, ECF No. 136 at 118-19 (Mr. Schweder Opening Statement). Azer submits Quidel improperly "contends that it was Azer, not Quidel, that anticipatorily repudiated the contract' because Quidel never asserted Azer breached in a pleading nor counterclaim. ECF No. 127-1 at 4. Azer is correct Quidel did not previously plead nor otherwise bring claims of breach of contract or repudiation against Azer, but Quidel properly presented the

8

issue of Azer's ability to perform the contract to defend against Azer's anticipatory breach of contract claim.

Quidel's arguments and evidence concerning Azer's ability and willingness to perform the contract at issue concern the essential elements of Azer's anticipatory breach of contract claim. To establish an anticipatory breach of contract claim under Pennsylvania law, "there must be 'an absolute and unequivocal refusal to perform or distinct and positive statement of an inability to do so.'" *Edwards*, 335 F.3d at 272 (citing *2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies*, 489 A.2d 733, 737 (Pa. 1985)). But, "[a] party who cannot perform its own obligations under a contract is not entitled to collect damages." *Delaware Cnty. Solid Waste Auth. v. Evergreen Cmty. Power, LLC*, 277 A.3d 1166 (Pa. Super. Ct. 2022) (quoting *Nikole, Inc. v. Klinger*, 603 A.2d 587, 593-94 (Pa. Super. 1992)); *see also* Pennsylvania Suggested Standard Civil Jury Instructions § 19.210 (modified) (providing an element of anticipatory breach is as follows: "[Name of party] must prove the following: . . . [name of party] would have been able to [insert duties/obligations] under the contract.").

Here, Quidel properly raised Azer's inability or refusal to perform the contract to show Azer could not meet an essential element of anticipatory repudiation—that it "would have been able to [perform] under the contract." Pennsylvania Suggested Standard Civil Jury Instructions § 19.210 (modified). On this issue, the jury considered evidence such as Azer only receiving eight out of twelve machines to use in performance of the contract and Azer's initial issues with the machines' functionality. *See e.g.*, Jury Trial Day Two Transcript, ECF No. 137 at 193 (A. Ardekani Testimony). There is thus at least "minimum quantum of evidence from which a jury might reasonably afford relief" concerning Azer's ability (or inability) to perform the contract at issue. *Keith*, 909 F.2d at 745 (citations omitted). The Court is not tasked with weighing the

evidence presented on this defense—the jury has considered this issue and has spoken. Judgment as a matter of law is thus not warranted concerning Azer's ability to perform the contract.

And third, Azer contends it is entitled to judgment as a matter of law on its allegation Quidel breached the Parties' March 25, 2021 contract. Azer avers judgment as a matter of law on breach is warranted because "Quidel has failed to proffer [a][*sic*] sufficient evidentiary basis to refute Azer's breach of contract claim." ECF No. 127-1 at 5. Azer alleged Quidel breached or repudiated the March 25, 2021 contract when Quidel's representative Mr. Hiva Ardalan communicated Quidel would not perform the contract's terms on a phone call on June 21, 2021. *See* ECF No. 127-1 at 6. But both Parties proffered witnesses testifying to the June 21, 2021 phone call. Quidel's witness, Hiva Ardalan, provided the June 21, 2021 phone call concerned Quidel "being flexible and trying to come up [with][*sic*] a schedule that was attainable by both sides" that would "adjust [the quantity] to the current lower demand." Jury Trial Day Two Transcript, ECF No. 137 at 257 (H. Ardalan Testimony). Quidel thus contended the call was an attempt to "adjust . . . [the] pace [of] manufacturing and delivery" with the suppliers as partners. *See* Jury Trial Day Four Transcript, ECF No. 139 at 84 (Mr. Schweder Closing Statement). On the other hand, Azer's witnesses recalled Mr. Ardalan stating Quidel could not buy the 120 million tubes agreed to in the contract. *See e.g.*, Jury Trial Day Two Transcript, ECF No. 137 at 67-68 (R. Ardekani Testimony); Jury Trial Day Three Transcript, ECF No. 138 at 213 (M. Szczepanek Testimony).

It is the jury's duty to consider and weigh the Parties' differing accounts of the June 21, 2021 phone call. In the light most favorable to Quidel, the record contains a minimum quantum of evidence concerning Quidel's claims it did not "absolute[ly] and unequivocal[ly] refus[e] to perform [n]or [provide a] distinct and positive statement of an inability to do so.'" *Edwards*, 335 F.3d at 272 (citing *2401 Pennsylvania*, 489 A.2d at 737). The Court will not weigh and otherwise

determine the credibility of the witnesses or other evidence presented on this issue. Thus judgment as a matter of law is not warranted.

> ii. *Quidel's Motion for Judgment as a Matter of Law*

Quidel avers judgment as a matter of law is warranted because no reasonable jury could find: (1) Quidel breached the March 25, 2021 contract; (2) Quidel anticipatorily breached the March 25, 2021 contract; nor that (3) Azer proved damages to the requisite degree of certainty. *See generally* ECF No. 128. First, Quidel contends no reasonable jury could find Quidel breached the contract because "Azer's case-in-chief established that Azer was not ready to perform the March 25 Contract before it filed suit against Quidel on July 2, 221." ECF No. 128 at 5. Specifically, Quidel points to "Mr. Adam Ardekani and Mr. Reza Ardekani['s] testi[mony] that there were problems with the eight machines when they arrived, and that they were still trying to fix the problems as late as June 24, 2021."[1] But Azer provided witnesses testifying that the machines could operate as needed under the contract. *See e.g.*, Jury Trial Day Two Transcript, ECF No. 137, ECF No. 137, at 64-65 (providing the machines were running and did not have any issues preventing them from performing full operations in June 2021); *id.* at 98-99 (R. Ardekani Testimony) (providing Azer could perform the project with the machines they had in possession despite not receiving all machines ordered); *see also id.* at 147-48 (A. Ardekani Testimony) (testifying the Azer team and its machines were ready to start filling and completing services under the contract). Azer's evidence in support of the machines' capacity is "evidence from which a jury might reasonably afford relief.'" *Keith*, 909 F.2d at 745. Judgment as a matter of law is not warranted concerning this issue.

---

[1] ECF No. 128 at 5 (citing Joint Exhibit 181). Quidel also submits that four of Azer's twelve machines were not delivered until after Azer filed the present action, and Azer's machines could not perform under the contract until August. *Id.*

11

Next, Quidel avers "Azer has failed to show that Quidel anticipatorily breached the March 25 Contract with Azer on June 21, 2021." ECF No. 128 at 6. Moreover, Quidel submits that evidence does not establish Quidel absolutely and unequivocally refused to perform the March 25, 2021 Contract. *Id.* But Azer provided witnesses who stated Quidel's Hiva Ardalan told Azer's representatives during a June 21, 2021 phone call that Quidel refused to perform the terms of the Parties' March 25, 2021 contract. *See e.g.*, Jury Trial Day Three Transcript, ECF No. 138 at 192 (M. Szczepanek Testimony) (providing Mr. Ardalan stated "I'm not going to buy 120 million vials from you" on Quidel's phone call with Azer on June 21, 2021). Azer also presented circumstantial evidence in the form of emails concerning a decline in demand for Azer's product at issue in this case. Joint Exhibit No. 173 (Hiva Ardalan's June 16, 2021 email to Kevin Richardson). This evidence is sufficient for a jury to reasonably afford relief in favor of Azer on anticipatory breach. Thus judgment as a matter of law is not warranted.

And lastly, Quidel submits no reasonable jury could find Azer provided proof of damages to a reasonable degree of certainty. Azer provided an expert on the subject of damages, Jeffrey Buchakjian, and a fact witness, Matthias Szczepanek who testified to Azer's business costs and related damages. First, Azer proffered Jeffrey Buchakjian as an expert witness on forensic accounting and damages. Jury Trial Day Three Transcript, ECF No. 138 at 230 (J. Buchakijian Testimony). Mr. Buchakijian presented the following damages framework: "lost revenue, less . . . incremental costs to arrive at Azer's damages." *Id.* at 232-33. Mr. Buchakjian testified that "if Quidel breached the contract, then Azer suffered damages totaling $9,692,293." *Id.* at 233. To come to this number, Mr. Buchakjian subtracted what he considered to be incurred costs from the total contract price Quidel agreed to pay Azer—$10, 557, 120.00. *Id.* at 232-33. Mr. Buchajkian considered "all of the different business records, invoices, models that were created for purposes

of performing on this contract[] . . . testimony and other documentation . . . submitted to the Court by both parties, deposition testimony" and information from "sp[eaking with] both Mr. Ardekani and Mr. Szczepanek." *Id.* at 233-34. Mr. Buchakjian presented what he considered to be "lost revenue" of 10.5 million dollars based on the terms of the contract, "incremental costs Azer would have incurred to achieve this revenue," and facts concerning mitigation. *Id.* at 234-35. Mr. Buchakjian then further explained his damages calculation by providing specific considerations he made such as, Azer's labor costs, mitigation efforts, and costs relating to building a production room. *Id.* at 236-38, 240-42.

Azer's fact witness, Mr. Szczepanek, also testified on the issue of damages. Azer proffered Matthias Szczepanek to testify to Azer's businesses expenses on the contract at issue. Mr. Szczepanek worked as the financial controller of Azer in its accounting department. Jury Trial Day Three Transcript, ECF No. 138 at 158 (M. Szczepanek Testimony). Mr. Szczepanek detailed several costs Azer incurred related to the contract at issue, such as the costs of, inter alia, machines, imports and shipping more generally, maintenance of the production space, and labor. *See generally id.* at 161-187. Mr. Szczepanek also spoke to Azer's mitigation efforts. *Id.* at 187-88 (describing Azer's use of equipment that are "highly customized to a specific purpose" and thus difficult to resell).

Quidel contends Azer's damages are too speculative because Azer's expert Mr. Buchajkian said his damages calculation was "hypothetical" due to Quidel's failure to perform the contract. But Azer brings an anticipatory repudiation claim which concerns "a breach in the future." *Franconia Assocs. v. United States*, 536 U.S. 129, 139 (2002). In anticipatory repudiation claims without any performance before the repudiation, plaintiffs inherently must estimate costs based on the value of a future, anticipated performance. Azer's evidence does not rise to speculation. *Cf.*

13

*Roadway Exp., Inc. v. Highway Truck Drivers & Helpers, Loc. No. 107*, 299 F. Supp. 1058, 1063 (E.D. Pa. 1969) (finding charging an issue of mitigation where there was "no evidence to support such a charge" would improperly lead the jury to speculation or conjecture); *Utz v. Johnson*, No. 04-CV-0437, 2004 WL 3828095, at *3 (E.D. Pa. Dec. 6, 2004) (finding insufficient evidence on the issue of mitigation of damages where the defendant did not proffer an expert on the subject). Thus Azer's damages evidence is sufficient and judgment as a matter of law is not warranted.

    c. <u>Azer's Motion to Alter Judgment as to Inclusion of Pre- and Post-Judgment Interest</u>

Azer contends, as a result of Quidel's breach of the Parties' March 25, 2021 contract, Azer is "entitled to pre-judgment interest at a rate of six-percent from the date of Quidel's breach until the date that judgment is entered, and post-judgment interest pursuant to 28 USC § 1961 for the period of time when judgment is entered until Quidel satisfies the judgment." ECF No 133 at 2. Quidel does not dispute that "the jury verdict entitles Azer to seek prejudgment interest at the rate of six percent, [but it] disputes Azer's claim as to when interest begins to accrue and Azer's method of calculating interest." ECF No. 142 at 4. And concerning post-judgment interest, Quidel submits "any post-judgment interest awarded to Azer should be computed beginning on the date this Court enters its order regarding prejudgment interest . . . . [and] the applicable rate . . . will be determined and distributed by the Office of the United States Courts at that time." *Id.* at 6-7.

    i. *Prejudgment Interest*

Azer avers it is "entitled to pre-judgment interest at a rate of six-percent from the date of Quidel's breach until the date that judgment is entered." ECF No 133 at 2. "Under Pennsylvania law, the award of pre-judgment interest in contract actions is not discretionary."[2] More

---

[2] *Edwards*, 330 F. App'x at 352 (citing *Buford*, 841 F.2d at 56–57) (internal citation omitted)). And "[s]tate law governs awards of prejudgment interest . . . [where, as here, a matter is a] federal

14

specifically, "Pennsylvania has followed the Restatement (Second) of Contracts [Section] 354, which provides: If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled." *Alumisource*, 279 A.3d 1270 (quoting *Krishnan*, 171 A.3d at 874 (quoting Restatement (Second) of Contracts § 354)).

Here, the Parties did not explicitly provide a contractual provision concerning when payment is due on the contract. *See* Mem. Op., ECF No. 103 at 12; *see also* Mem. Op., ECF No. 66 at 15-16. Nevertheless, courts applying Pennsylvania law have found plaintiffs are entitled to prejudgment interest beginning from the time the contract was breached. *See e.g.*, *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 632-33 (E.D. Pa. 1998); *Kelly v. Peerstar LLC*, No. 3:18-CV-126, 2022 WL 16861275, at *7, *9 (W.D. Pa. Oct. 11, 2022) (providing prejudgment interest from Defendant's breach of failing to make payments under the Parties' settlement agreement); *see also Benefit Tr. Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.2d 1174, 1178 (3d Cir. 1985) (finding prejudgment interest does "not depend upon discretion but is a legal right 'which arises upon breach or discontinuance of the contract . . . .'") (quoting *Palmgreen v. Palmer's Garage, Inc.*, 117 A.2d 721, 722 (Pa. 1955)). Here, although the jury did not explicitly provide **when** the contract was breached, the jury found Quidel breached the contract—and Azer's sole theory of breach concerned an anticipatory repudiation or breach during a June 21, 2021 phone call involving the Parties' representatives. *See* ECF No. 147 at 3 ("But the only breach at issue in this case was Hiva Ardalan's June 21 phone call repudiating the contract.") (internal footnote

---

diversity action." *Id.* Here, the Parties do not dispute Pennsylvania law governs the issue of prejudgment interest.

omitted); *see also* Pl. Pretrial Memo, ECF No. 65 at 8 ("By June 21, Quidel had informed Azer that Quidel would not be moving forward with the project as outlined in the parties March 25 agreement.").

Therefore, Azer is entitled to prejudgment interest on the $8,521,609.00 verdict at a rate of six-percent from the date of June 21, 2021.[3] Annualized six-percent interest on the $8,521,609.00 verdict amounts to a daily interest amount of $1,400.81.[4] There are 759 days between the date of the breach of contract on June 21, 2021 and the date of this Memorandum Opinion and corresponding Order awarding prejudgment interest.[5] Thus Azer is entitled to a total of $1,063,229.97 in prejudgment interest.[6]

      ii. *Post-Judgment Interest*

Azer also contends it is entitled to post-judgment interest under federal law. *See* ECF No 133-1 at 4 (citing 28 U.S.C. § 1961 (2000)). Federal post-judgment interest is governed by Section 1961(a), which provides for "a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding," computed daily and compounded annually. 28 U.S.C. § 1961(a) (2000). In its

---

[3] The Court also notes Quidel submits the Parties maintained an installment contract, and thus "interest should not begin until September 6, 2021—thirty days after the earliest time Azer could have commenced filling tubes." ECF No. 42. But the jury's verdict necessarily found Azer able to perform the contract at the time of breach. And Azer only presented a theory of breach based on a phone conversation between the Parties on June 21, 2021. So Quidel's averment in favor of a later start time of prejudgment interest is unpersuasive. And moreover, the Parties' March 25, 2021 contract is silent on contemplated periodic payments—unlike installment payment contracts. *See* ECF No. 147 at 2 n. 3 (collecting cases).

[4] $8,521,609.00 times 0.06 equals $511,296.54 per year or $1,400.81244 per day.

[5] The Court calculated prejudgment interest as of the date of this Memorandum Opinion and corresponding Order, July 20, 2023.

[6] $1,400.83 (rounded to the nearest cent from $1,400.812.44) times 759 days totals $1,063,229.97.

reply brief, Azer avers "prejudgment interest should run until the date that this motion is decided, after which post-judgment interest would begin to accrue." ECF No. 147 at 5. And both Parties correctly aver "post-judgment interest cannot accrue until the entry of the order fixing the amount of prejudgment interest." *Travelers Casualty and Surety Co. v. Insurance Co. of N. America*, 609 F.3d 143, 174-75 (3d Cir. 2010); *see also* ECF No. 142 at 6 (Quidel contending "post-judgment interest cannot accrue until the order fixing the amount of prejudgment interest") (internal quotation omitted); ECF No. 147 at 4-5 (Azer averring "consistent[ly] with Quidel's position that post-judgment interest should be computed to begin on the date that this Court enters its order regarding prejudgment interest.") (internal quotation omitted). Thus Azer is also entitled to post-judgment interest under Section 1961(a) from the date of this Order accompanying this Memorandum Opinion.

### 4. CONCLUSION

For the foregoing reasons, Azer's Motion to Preclude Quidel's Witness Flanagan (ECF No. 120) is denied as moot. Furthermore, Quidel's Motion for Judgment as a Matter of Law (ECF No. 127) is denied; and Azer's Motion for Judgment as a Matter of Law (ECF No. 128) is denied. Lastly, Azer's Motion to Alter Judgment as to Inclusion of Pre- and Post-Judgment Interest (ECF No. 133) is granted.

An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge